Ladies and gentlemen, good morning. We have five cases on the calendar this morning, patent cases. One from the Court of Federal Claims, one from the Court of International Trade and one from the Merit Systems Protection Board which is being submitted in the briefs and therefore will not be argued. The first argued case is Denisco v. Novozymes 2013-12-14, Mr. Hunger. Good morning, Your Honors, and may it please the Court. By amending a long-pending application to include a claim requiring for the first time ever the specific alpha-amylase mutation identified in Denisco's recently-allowed claim and then immediately asserting an interference on the ground that Novozymes' claim reads on the precise molecule, precise mutation claimed by Denisco and then reasserting that Novozymes has repeatedly and unambiguously taken the position that its patent covers the precise alpha-amylase variant claimed in Denisco's patent. Let me ask you, does the recent case decided by this Court, the Novozymes v. DuPont nutrition, how does that impact the substantive nature of the controversy here? Well, in terms of the substantive invalidity issues, we think if this case were to proceed, that that would be highly relevant because the same invalidity arguments, the same type of invalidity arguments that this Court accepted in that case would be the arguments, among the arguments, that Denisco would be advancing in this case and indeed alleged in its complaint in this case. Highly relevant as in controlling? Novozymes might disagree, but certainly we would, I think, take that position. Yes, Your Honor. Okay. The other question is jurisdiction. Correct. And you're pushing the envelope a little, right? Wouldn't this be the first case in which there's actually no communication between the parties with regard to some sort of threat? Wouldn't this be the first case where we make that leap, push the envelope in that direction? Well, certainly, I don't think... But isn't it different? Every case, each one of these cases is different, yes, and they all depend on the totality of the circumstances, but I think certainly there are cases in which, for instance, there are no communications between the declaratory judgment defendant and the declaratory judgment plaintiff because the defendant has made communications to someone else, maybe a customer, maybe someone else, that conveys, that creates the implicit risk. And that's precisely what has happened here with Novozymes' communications to the Patent Office and to the public because these are public statements on the public record and published proceedings, not once but twice asserting that its patent, its claim now issued as the 573 patent, reads on the precise molecule claimed by DENISCO in its patent and embodied in DENISCO's products, which are already on the market, a fact that Novozymes, of course, is well aware of because they're the primary... We are the primary competitor to Novozymes and have been for years in the current and are at issue here, were at issue in the prior litigation brought in 2010 by Novozymes, the one that Your Honor referred to. They were at issue as non-infringing alternatives. But as Judge Prost suggests, there was no direct threat under this patent. There was no direct communication specifically from Novozymes to DENISCO. That is true, but there wasn't. Under this patent because it had just issued the day before. There was no communication afterwards, but prior to its issuance, Your Honor, there was the communication to the patent office and therefore to the public and obviously to DENISCO not once but twice that they were claiming the same invention. Presumably there wasn't a communication from Novozymes saying we have a notice of allowance and three months from now this patent is going to issue and be aware of it. There was not such a communication directly, Your Honor. But again, this Court's cases do not require a direct communication between the parties and this Court's cases including the 3M case and many other cases cited in the briefs make clear that there are no bright line rules in this area. You can't say just categorically this, that or the other thing. You have to look at the totality of the circumstances and an implicit threat is clearly sufficient. And here that's exactly what we have in light of not just their statements with respect to the interference, their claim to the very molecule embodied in our product and claimed in our patents, but also the litigation history which makes clear that they have done this again and again. What about the 291 claim? Section 291? Yes, Your Honor. The district court threw that out. Yes, Your Honor. And we think clearly that was wrong as well. The district court ruled on rightness grounds. There's no question that there's a dispute here about whether there's an interference. So we just send it back? I mean, if you were to prevail on the DJ question, then we just send it back and let the district court do over on that, right? Yes, Your Honor. Absolutely right. There's unquestionably a dispute as to the interference and that standing alone is something that is a justiciable controversy. In fact, Novozymes asked the Patent Office to declare an interference. Correct, Your Honor. Not once but twice. Even after they'd gotten their notice of allowability when it was completely unnecessary for them to do that. They just wanted to make perfectly clear that there really is a dispute here. But wasn't your problem at the district court the fact that the district court felt that all the history at the Patent Office was all well and good and it might give you some indication that you could be in trouble in terms of a lawsuit, but that the district court felt there had to be some post-issuance affirmative act? Yes, Your Honor. I think that's the only way to read the district court's decision. It says again and again that there couldn't have been an affirmative act, the kind of affirmative act that this court's cases require because the conduct at issue was pre-issuance. And that's simply wrong under the 3M case and under the Arkema case where pre-issuance conduct or in the 3M case pre-reissuance conduct was deemed sufficient to justify the subsequent DJ action because it created a reasonable apprehension of suit. The district court's analysis actually, we think, agrees with us that there is a reasonable apprehension of suit. The district court said over and over again, yes, it may well be true that there's reason to expect Novozymes to bring suit at the time of its choosing, which is enough under this court's cases to create a reasonable apprehension of suit and therefore to satisfy Article III. But the district court was, I think, confused by this view that, well, if it's pre-issuance, unless there's an absolutely explicit allegation that the defendant is infringing my patent, somehow you can't consider that. And this court's cases simply don't allow that, both because of the precedence I cited and also because we're not allowed to have bright-line rules in this area. You need to consider all of the circumstances. But we've never said, we've never come right out and said one way or the other that activities in the patent office are sufficient or not, right? I believe that's correct, Your Honor, but you certainly haven't said they're insufficient. And interestingly, in the 3M case that I mentioned, the court considered a question. That was a reissue case, and the court analyzed the question whether the conduct of the defendant in the reissue proceedings could give rise to a justiciable controversy. And there it said it didn't because there was no reason to infer a threat from that conduct. But what the court said, its reasoning, I think, is instructive because the court said that, in this case, there's no evidence that an objective observer in 3M's position, that is, the D.J. Planoff's position, would conclude that Avery, the D.J. defendant, initiated reissue proceedings for the purpose of bringing a lawsuit against 3M accusing the product of infringement. Here, unlike in that case, here there is explicit reason to believe that they brought these proceedings for that explicit purpose because they've done it twice before. Two times before, this very same defendant has accused DENISCO or its corporate predecessor of patent infringement after DENISCO issued a new product that was replacing an existing product, just as they've done here, and Novazymes, after that product came on the market, went to the patent office, amended an existing application to claim the precise molecule found in that new DENISCO product, and as soon as that patent issued, they then filed a lawsuit. So they've done it twice before. Mr. Hunger, as you're well aware, there are two aspects to jurisdiction on a D.J. complaint. One is actual jurisdiction and the other is discretionary. Yes, Your Honor. And that wasn't reached here. So if we agree with you, it's very possible that this may go back and the district judge may dismiss it on a discretionary basis, right? He may be spinning a lot of wheels. We don't think so, Your Honor. This court has suggested that there has to be some legitimate reason for declining to exercise discretion. Obviously, here the district court did not consider that question, and so it would have to go back, if you agree with us on jurisdiction, as we suggest you should, it would have to go back because the court hasn't exercised its discretion. But we think here there would be no reason not to exercise that discretion. There's no good reason why this isn't an appropriate forum or other reasons why you might say we're not going to allow this to go forward. DNISCO has a clear interest in getting certainty and clarity here in light of the cloud that Novozyme's allegations have placement of intellectual property rights. It has a patent. It's entitled to acquire a title to that patent just as a real estate property owner would be in similar circumstances. And for that reason as well, in addition to the fact that Novozyme is implicitly threatening DNISCO's ongoing market activities and marketing its product, for all those reasons we think the judgment should be made. I know it's obviously not in the record, but since this dismissal, have there been any infringement allegations? I don't know, Your Honor. I don't have the answers to that. If the court has no further questions, I'll resume. We will save the rest of your time, Mr. Oliver. Mr. Tellexson. Good morning, Your Honors, and may it please the court. This court said in the Prasco case that when looking at the totality of the circumstances analysis for Metamune, that it's important to consider what has not occurred. And in this case, there are a lot of things that have not occurred. There have been no accusations of infringement, no implied or inferred accusations of infringement, no suggestions or demands for royalty payments. You're suggesting the rule is negative totality of circumstances. Well, I think you can go down through everything that this court has used to find jurisdiction in the other cases, and none of those things are present in this case. Yeah, but this is unique, and I mean, at least in my personal experience, I've not had an issue of an interference here. But it seems to me, as Mr. Hunger suggested, that this is quite an explicit, direct, kind of extraordinary set of circumstances that arose before the patent issue. I mean, in a way, you're right, it may be just different from what we've done in other cases, but it certainly goes in the direction, does it not, of assuring that indeed there was a reasonable threat, apprehension, on the air. Your Honor, I don't think so, because I think an interference proceeding is very different from getting a patent and then making an affirmative act to enforce it. There are many, many cases out there where... But given what went down in the interference, wouldn't DNISCO or anyone similarly situated have an apprehension, an objectively reasonable basis for concluding, this is what they're prepared to do, and this is why they're going to do it? There are a lot of reasons to have a patent, and there are a lot of reasons to invoke an interference when you see some competitor is claiming a space that you believe is yours. But these were direct competitors, and you get a patent to exclude others, and this is essentially the same product. And there's been prior litigation between these parties on similar products. Isn't all of that correct? And isn't that what the totality of the circumstances relates to? The prior litigation, Your Honor, has been on different patents and different products. Different types of products? Enzymes? Well, they're all enzymes, but everybody's enzyme is different and has its own unique properties, and so they are all enzymes, and there were three cases... Well, we have cases in our cases where we talk about prior litigation. It's typically about different products, isn't it? Well, I think where prior litigation can be more relevant is where it's the same patent, like the Micron case where they were suing everyone in the industry with the same set of patents. But here you have three separate patents on different products that are not related to the patent suit. The 573 patent has never been alleged to infringe by anybody. There's been no suits on the 573. How can you say those products are not related at all to the patent suit? Isn't the whole point about whether or not there's a genus that sufficiently claims so that you have the right to claim these individual species as well? I'm sorry, Your Honor, I didn't quite get that. Well, isn't the whole point of the prior litigation, and our court's decision, is that just by claiming a broad range, a genus-type range, doesn't mean you get every single enzyme that might fall within that, right? You're talking about the prior Novozyme case before this court?  Yeah, that was a different patent family, Your Honor. That is not the same patent family as this, so it's a completely different set of facts. It was a different parent application, so the families are completely different. They may try to draw some parallels between the two cases if this case were to go on, which Novozyme has never alleged that this patent should be asserted and has never given any indication that it will. But those are separate patent families, Your Honor. But these two here are peptides having alpha-amylase activity, and each one introduces a proline at position 188, and they have almost the same number of amino acids. And as you recognize, Novozyme has requested an interference in the patent office. Your Honor, there are many cases where interferences have been actually invoked and actually preceded, and there's not a single case that I'm aware of and that Danisco has cited where if you lose an interference, that gives you DJ jurisdiction. There are reasons to invoke an interference, and there are reasons to say, that's my invention, that are completely divorced from asserting a patent. And once the patents have issued, that's what 291 is for, right? If there is a properly pled complaint that there is an interference, 291 can be used. But that, as the judge below said, they did not plead an interference, and so therefore it could not stand on its own. It was contingent upon counts one and two, so it had to be dismissed when he dismissed counts one and two. But why didn't the judge at least give them an opportunity to amend their complaint? As he said in his decision, they never put forth any suggestion as to how they would correct it. They had the opportunity, when you want to amend your complaint, you usually put a draft complaint in and ask the court to allow you to amend. They simply had a vague statement of, we'd like to amend, but they never suggested to the district court how they could fix it. And so he said, you never gave me any reason to believe that you could fix it, and so therefore I'm denying your request to amend. Is it your position that we should decide as a matter of law that everything that happens before the issuance of the patent is irrelevant to D.J. jurisdiction analysis? I think with one exception, Your Honor. I think certainly the petition to make special cases where an affirmative allegation of infringement is made, those are very clear. I mean, that's something that happens during prosecution, and I think that can create jurisdiction, and there are cases that have said it does. But I think there are lots of times where you make statements in prosecution about the scope of the claims, the meaning of the claims, how it differs from the prior art, and your competitor may read that and get very concerned. But unless you do something affirmative to assert that patent, it doesn't give jurisdiction. And that's exactly what's going on here. So are you basing that on the nature of the activities, or are you basing it on an argument that in the absence of a patent, there's nothing arising under the patent law? I'm saying that the case law is clear that simply the act of getting a patent issued does not give D.J. jurisdiction. And so whether you try to invoke an interference, whether you make certain statements about how broad your patent is, none of those things can be used to say those are affirmative acts going towards enforcement. So I think there has never been a case that has held that statements in the patent office, except for the petition to make special that we talked about, can be used as an affirmative act going towards D.J. jurisdiction. So I would say that you can make that bright-line rule. Anything further? Not from me. Thank you, Mr. Pellickson. Mr. Hunger has some rebuttal time. Thank you, Your Honor. Very briefly, first of all, Novoselic says that prior cases involved different patents and different products, but the relevant test under this Court's precedence is whether they're related. They don't have to be identical. In the 3M case, for instance, where the Court relied on prior litigation, it was a predecessor product, a prior generation, just as we have here. Each of the four cases involved subsequent generations of alpha-amylase products, alpha-amylase enzymes produced by bacillus organisms used in the starch liquefaction portion of the ethanol production process. So it's the same market, the same companies, essentially, just prior corporate predecessors. If we didn't have the litigation history, would statements to the Patent Office be enough? In the vast majority of cases, I would think statements to the Patent Office, like an interference, would not be enough. It's certainly not going to give rise to a declaratory judgment case, a jurisdiction over a declaratory judgment case for non-infringement, for example, because you'd need many additional facts, like you have here, in order to give rise to a reasonable attribution of the suit. If the statements to the Patent Office were exactly the kinds of statements we have here, where they claim that it does exactly read on the product that you're talking about, where they say all the things that they said, would that be enough? Or is there some policy reason, for instance, that we should say we don't want to interfere with open dialogue between an applicant and the Patent Office? I think it would depend on the circumstances. And certainly, as I said, it would often not be enough. I don't think that the Court can, as a matter of policy, limit declaratory judgment jurisdiction. Now, there might be arguments to that effect at the discretionary stage in an appropriate case. But here, Novozyants can't say, oh, we were required to make these allegations. In fact, they made it the first time when they raised the suggestion the first time. They didn't have to do that. They wouldn't have lost rights. But then they came back again after they'd gotten their notice of allowability and said it again. And this Court and the MPEP make very clear you have no obligation to raise anything at that stage. There's no estoppel. And yet they went ahead and did it anyway. So even if there were such a policy consideration that could be considered at the discretionary stage, which we're not at yet, it wouldn't apply here, because they went much further than they could possibly have been required to do. And with respect to the interference point, again, interference does not usually give rise to BJA jurisdiction. But under the particular facts and totality of the circumstances here, we think it clearly does. And with respect to the pleading issue, the judge dismissed the interference claim on this rightness ground. That was not even the argument that the other side made. Their argument was this claim that as a matter of 12b-6 law, essentially in what they claim is a jurisdictional pleading requirement, we didn't allege an interference. That's clearly wrong. We do allege an interference. It's their allegation of an interference. That's enough to create a justiciable controversy. So the rightness dismissal was wrong. So the court should send back the 291. But isn't it true that you did have some odd statements in your pleading that said that somehow this interference was contingent upon the ability to assert the… Yes, because of the difficulty that we were in. Danisco obviously doesn't admit that there's an interference. It's Novazine that claims that there's an interference. So it was pleaded. But if there's a pleading technicality problem, then we should be given a chance to re-plead on this theory that the judge raised for the first time in his decision. And so we think for that reason as well that the case should be sent back. In other words, Novazine having asked the PTO to declare an interference is relevant. It supports your point about 291. Yes, Your Honor. Absolutely. And then finally, Judge O'Malley, with respect to your question about the substantive issue, it's true that the patent applications are not the same patent applications in this case and in the prior case. But the substantive issue is the same. In fact, the written description problem that Novazine has here is even greater than it was in that case because the genus is infinitely large. There are literally trillions or more than trillions, I don't even know the number, how you would describe the number, it's so large, of possible combinations that they set forth in their application that produces patents. And only after DENISCO was selling its product, had identified through its claim the precise molecule that it had discovered through its extensive R&D activities and was getting a patent on it, only at that point did Novazine decide to specifically submit a claim that required that particular molecule that DENISCO had discovered. And the only reason for doing that, since DENISCO is the only company selling such a product, is to go after DENISCO, just as they have done three times before. Thank you. Thank you, Mr. Hongo. We'll take the case on revised.